## Commonwealth v. Graser.

*Harry Felix*, for Commonwealth; *Isadore Stern*, for defendant.

REED, P. J., O. C., 47th judicial district, specially presiding, Jan. 8, 1931.— On Oct. 24, 1930, Ferdinand H. Graser having pled guilty on indictments Nos. 532 and 533 of May Sessions, 1930, of embezzlement by trustee, in order that the court might determine what would be a just and conscionable sentence for the defendant, we permitted several witnesses to be called, who testified in his behalf.

At the close of the offer on behalf of the defendant, the court deemed it proper to defer sentence until after the evidence had been transcribed and fully analyzed and considered, and it was then announced that after that had

been done the court would write an opinion and fix the time for the defendant to appear for sentence.

The defendant called no less than fourteen eminent and reputable citizens of the City of Philadelphia, all of whom testified that, prior to the time he misappropriated the funds entrusted to his care, he bore an enviable reputation; that, so far as they knew during the many years they had associated with him, he had conducted himself in such a manner as to give him a sterling character and a reputation for honesty that had never been questioned.

The evidence also discloses the fact that the defendant had been a member of one of the leading churches in the City of Philadelphia; that he had occupied the highest position that could be conferred upon him in this church, and frequently took charge of and conducted services in said church.

The defendant is most fortunate in having such an array of reputable and outstanding men who were willing to take up his cause for the purpose of having the court suspend sentence and place him on parole, and we wish to say that the court does not have the slightest doubt as to the good intentions and the sincerity of each and every one of the witnesses who appeared before it and gave their reasons why the defendant should not receive a prison sentence; but in the final analysis, evidence of this kind should only go by way of mitigation of sentence and not to the extent of permitting a defendant to go unpunished if the crime or misdemeanor which he committed deserves punishment at the hands of the court.

The uncontradicted evidence is that on Dec. 5, 1924, Ferdinand H. Graser was appointed trustee for Laura D. Stroud Ladd under the will of William C. Stroud, deceased, in place of George Burnham, Jr., deceased, security to be entered by the said trustee in the sum of $150,000. The powers to be exercised over the fund for which he was made trustee were as follows:

"To invest, re-invest, alter, vary and change investments and re-investments, without being obliged to confine investments or re-investments to what are technically known as 'legal securities,' it being my will that my trustees shall have the power to invest in any form of security, other than in shares of corporate stock, which they shall deem wise."

It will be noted that the power over the investments on the part of the trustee prohibited the investment in "shares of corporate stock," but the defendant, utterly disregarding this inhibition or restraint placed upon his powers, took the securities which he held in trust and hypothecated them in order to raise money to purchase stock, in his own name, of a corporation in which he was one of the principal officers, the amount of the value of these securities misappropriated in this particular case being of the sum of upwards of $150,000, and in another instance being of the sum of $70,000; and as there is nothing before the court which would warrant it in finding that if the venture had been successful the defendant intended to give the *cestui que trust* the advantage of the gain which would have been reaped from the enterprise in which he invested the money realized from the hypothecation of this stock, therefore, it appears that there was a willful violation of the Act of March 31, 1860 [P. L. 382, § 113], which reads as follows: "If any person, being a trustee of any property for the benefit, either wholly or partially, of some other person, or for any public or charitable purpose, shall, with intent to defraud, convert or appropriate the same, or any part thereof, to or for his own use or purpose, or the use or benefit of any other person, or shall, with intent aforesaid, otherwise dispose of or destroy such property, or any part thereof, he shall be guilty of a misdemeanor."

It is admitted that the defendant enjoyed a high degree of intelligence and evidently had considerable business experience, and his social standing was

such that he must have known (although ignorance of the law excuses no one) that he was abusing the trust conferred upon him and violating the law when for his own gain he appropriated the securities belonging to the *cestui que trust* to obtain money to buy stock in a corporation in which he was interested.

Of course, the plea of guilt warrants the court in holding that he is guilty of embezzlement, and the only things for it to consider are the extenuating circumstances, if any, that should cause a mitigation of sentence. The most unpleasant duty a court has to perform is the imposing of a sentence. I assume that it is not pleasant for any judge to send a defendant to prison, yet the court would be derelict in his duty if, when the occasion arises that a defendant should be punished for a crime or misdemeanor, he failed to mete out such punishment as he deems proper to protect society and vindicate the laws. I believe that a study of the history of punishment, as far as criminal jurisprudence is concerned, will establish beyond a doubt that there are two major reasons for the infliction of punishment upon the criminal. The one specific purpose is to prevent a repetition of the crime, and in this particular instance we do not hesitate to say, from the appearance of the defendant and the testimony of his witnesses, that there will be no cause to inflict punishment for the purpose of preventing the repetition of a crime by him. The other specific purpose is to deter others from committing like offenses, and in a case like this, where a defendant has misappropriated securities to the value of $226,000, we are afraid that if he were to be placed on parole or the sentence suspended it would only be an invitation to others who are placed in similar positions of trust to likewise convert or appropriate trust funds to their own use.

At the time of the hearing, the court asked a number of the witnesses the question: "Do you think we should be more lenient to him [the defendant] because he is a man of high standing in his community?" The answers were pretty generally, "No question he got the money, as I understand it, and put it in the business." However, the witnesses tried to impress the court with the fact that due to the defendant's social position and standing in the community in which he resided he has suffered sufficiently, mentally, for his misdemeanor, and that because he has so suffered he should not receive a prison sentence. Against probity, honesty, trustiness and faithfulness there is no law, and, hence, there is no punishment; but as against dishonesty and unfaithfulness there are laws, the purpose of which is to mete out proper punishment to those who violate them, and it becomes the unpleasant duty of the court to impose proper sentences in order to protect society and punish the wrongdoer. Of course, in the event that the court errs in its judgment and inflicts a sentence that is too severe, the defendant always has his remedy by taking an appeal to the Pardon Board. This court does not see why it should discriminate between a man of low degree and high degree; in other words, we should not have one code of laws for the poor man, or the man of low degree, and another code for the rich man, or the man of high degree, and we should not permit social standing to cause us to discriminate in the meting out of justice; if we were to differentiate in any manner, it should be in favor of the man who has lacked an opportunity to discern the difference between right and wrong instead of in favor of the man who has had every opportunity to know what is right.

It is needless to discuss this matter further, and we are not writing this opinion in an apologetic mood, but we thought it due to the defendant and his friends that the court express its convictions as to why it cannot accede to their requests that the defendant be paroled.

Therefore, after reading and fully considering all of the evidence submitted on behalf of the defendant to be placed on parole or to have sentence suspended, we deny the application and order the defendant to appear for sentence on Jan. 8, 1931.